Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

April 01, 2009

**Appeal Number: 08-10305-AA**
Case Style: USA v. Bernetta Lashay Willis
District Court Number: 06-00071 CR-F-N

TO:   Debra P. Hackett

CC:   Timothy C. Halstrom

CC:   Christopher A. Snyder

CC:   Hon. Charles S. Coody

CC:   Administrative File

# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

April 01, 2009

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

**Appeal Number: 08-10305-AA**
Case Style: USA v. Bernetta Lashay Willis
District Court Number: 06-00071 CR-F-N

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Will Miller (404) 335-6194

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
For the Eleventh Circuit

No. 08-10305

District Court Docket No.
06-00071-CR-F-N

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Mar 3, 2009

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BERNETTA LASHAY WILLIS,
a.k.a. Nettie,
a.k.a. Hot Girl,
a.k.a. Hottie,
a.k.a. Hi-Girl,
a.k.a. LaShay,

Defendant-Appellant.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

Appeal from the United States District Court
for the Middle District of Alabama

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: March 3, 2009
For the Court: Thomas K. Kahn, Clerk
By: Clark, Djuanna H.

ISSUED AS MANDATE
APR 01 2009
U.S. COURT OF APPEALS
ATLANTA, GA

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2009
THOMAS K. KAHN
CLERK

No. 08-10305

D. C. Docket No. 06-00071-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BERNETTA LASHAY WILLIS,
a.k.a. Nettie,
a.k.a. Hot Girl,
a.k.a. Hottie,
a.k.a. Hi-Girl,
a.k.a. LaShay,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

(March 3, 2009)

Before EDMONDSON, Chief Judge, TJOFLAT and HILL, Circuit Judges.

PER CURIAM:

Defendant Bernetta Willis ("Defendant") was convicted of theft of government property and filing false claims for submitting seventeen fraudulent applications for Federal Emergency Management Agency ("FEMA") aid. She was also convicted of, among other things, threatening a witness, brandishing a weapon in the course of a violent crime, and distributing marijuana. After reviewing the evidence, the district court calculated the applicable sentence enhancements and sentenced Defendant to forty-three years in prison. She now appeals.

Because the district court did not clearly err in its calculation of Defendant's sentence, and because Defendant's ultimate sentence is reasonable, we affirm.

I. BACKGROUND

A. The Scheme

In the wake of Hurricane Katrina, FEMA established a system for disbursing expedited aid to hurricane victims. By applying for aid, victims automatically

2

received an initial $2,000 payment from FEMA.[1] If victims specifically requested assistance for rent or for personal-property damage, they would also automatically receive a payment of $2,358. By taking additional affirmative steps, victims could obtain up to $26,200 in aid per person.

Defendant was indicted for a scheme in which she and her co-conspirators submitted fraudulent applications for FEMA aid. Defendant, a resident of Montgomery, Alabama -- an area not affected by Hurricane Katrina and therefore not eligible for disaster relief -- submitted the applications herself or submitted them through other people she directed.[2] When another member of the conspiracy, Valarie Howard ("Howard") was indicted, Howard agreed to testify against Defendant. Three days later, Defendant, who had learned that Howard might testify against her, waved a gun in Howard's face and threatened to kill Howard for testifying.

Howard reported the incident and federal agents obtained a search warrant for Defendant's home. There, they discovered paperwork related to the fraudulent FEMA applications. They also found two loaded handguns within feet of marijuana packaged for distribution. A superseding indictment charged Defendant

---

[1]To expedite the process, FEMA did not verify victims' information upon initial application.

[2]When Defendant directed a co-conspirator to apply for funds, she typically demanded a cut of, and sometimes all of, the money awarded.

3

with fourteen counts of theft of government property; five counts of aggravated identity theft; two counts of filing false claims; and one count each for conspiracy, threatening a witness, using a handgun during a crime of violence, distributing marijuana, possessing a firearm in relation to drug distribution, and lying to a federal officer.[3]

At trial, seven of Defendant's co-conspirators testified against her and claimed that she was the mastermind behind the false-claims scheme. The testimony established that Defendant filed, herself or through others, seventeen fraudulent FEMA claims.[4] After a four-day trial, the jury convicted Defendant on twenty-two counts, including all of the conspiracy, gun, drug, theft, and false-claim charges, as well as on one aggravated identity-theft charge.[5]

B. <u>Post-Trial and Sentencing</u>

After trial, but before sentencing, the government offered uncontested

---

[3]In violation of, respectively, 18 U.S.C. § 641; 18 U.S.C. § 1028(a)(1),(2); 18 U.S.C. § 287; 18 U.S.C. § 371; 18 U.S.C. § 1512 (a)(2)(A); 18 U.S.C. § 924(c)(1)(A)(i), (ii); 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c)(1)(A); and 18 U.S.C. § 1001(a)(2).

[4]Trial testimony also suggested that Defendant filed multiple and duplicative disaster-relief claims for Hurricanes Dennis and Ivan, which occurred before Hurricane Katrina.

[5]Defendant was acquitted of four other aggravated identity-theft charges.

evidence that Defendant had filed three additional fraudulent Katrina claims. After reviewing the evidence, Defendant's probation officer prepared a pre-sentence investigation report ("PSI") based on Defendant's filing twenty fraudulent claims.

For sentencing purposes, the PSI required a calculation of the greater of the actual or intended loss Defendant caused. See U.S.S.G. § 2B1.1(b)(1), n.3(A) (court should use the "greater of actual loss or intended loss" when calculating sentence enhancement). Although FEMA suffered actual losses of $79,607.45, the probation officer calculated intended loss based on the maximum aid available for each fraudulent claim filed: $26,200. The PSI listed Defendant's intended loss as $471,600,[6] resulting in a fourteen-level sentence enhancement.

At sentencing, the government argued that the district court should adopt the PSI's recommended sentence enhancement for intended loss because Defendant consistently demonstrated an intent to obtain the most money FEMA would provide. Although some of Defendant's applications were not yet pursued beyond the $4,358 in automatic FEMA funds, the government contended that Defendant took affirmative steps to obtain a maximum award whenever possible.[7] Therefore,

---

[6]The government concedes that this calculation is incorrect. Twenty claims multiplied by $26,200 equals an intended loss of $524,000. This miscalculation is, however, harmless: both sums result in a fourteen-level sentence enhancement. See U.S.S.G. § 2B1.1(b)(1)(H) (fourteen-level increase for loss greater than $400,000 but less than $1 million).

[7]Defendant necessarily took additional and affirmative steps for each application that yielded more than $4,358.

the government argued, Defendant should be sentenced based on the maximum per-application loss instead of on the amount of aid she applied for or received from each FEMA application.

To support an intended-loss calculation of $26,200 per application, the government presented evidence of Defendant repeatedly seeking more than the $4,358 FEMA automatically disbursed to hurricane victims. For example, on 7 September 2005, Defendant (through Litasha Washington) ("Washington") requested money for a breathing machine -- a request beyond the scope of automatic rental assistance. As part of her conspiracy with Washington, Defendant submitted phony leases with Louisiana addresses to secure additional rental assistance. Together, Washington and Defendant sought $18,474.05 from a single FEMA application: $14,116.05 beyond the emergency funds automatically disbursed to victims.

On 11 September 2005, Defendant (through Valarie Howard) sought $18,620.09 in federal funds: $14,262.09 beyond FEMA's automatic payment.

Two days later, in a separate request, Defendant personally applied for another $8,983.88.

On 10 January 2006, Defendant requested rental assistance beyond FEMA's automatic aid. Remarkably, on 26 June 2006 -- months after she was first indicted

6

for the false-claims scheme -- Defendant again took steps to obtain funds for extra personal-property and rental assistance.

The government argued that although Defendant collected only $2,000 on seven of her fraudulent applications, Defendant's acts, when viewed together, supported a reasonable inference that she intended to obtain more than the $4,358 automatically available for each application.

Defendant objected to the government's intended-loss calculation. The district court nevertheless applied the PSI's recommended fourteen-level enhancement for intended loss. It also adopted the PSI's calculation of Defendant's offense level as 28, her criminal history as category II, and her guideline range as 87 to 108 months. The court sentenced Defendant to the high end of the guideline range, 108 months, to be served consecutive to a 34-year mandatory imprisonment term,[8] for a total sentence of 516 months (43 years). The district court denied Defendant's Motion for Variance, which was based upon Defendant's claim of diminished capacity.

---

[8]Three of Defendant's convictions required mandatory minimum sentences totaling thirty-four years: two years for aggravated identity theft, 18 U.S.C. § 1028A(a)(1); seven years for using a gun during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); and twenty-five years for possessing a firearm in relation to the distribution of a controlled substance, 18 U.S.C. § 924(c)(1)(C)(i). Each of the three terms must be served consecutive to any other sentence.

## II. STANDARD OF REVIEW

We review for clear error the district court's calculation of loss for sentencing purposes. United States v. Nosrati-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001). We review for reasonableness the ultimate sentence a district court imposes on a defendant. United States v. Williams, 435 F.3d 1350, 1353 (11th Cir. 2006).

## III. DISCUSSION

The central issue in this appeal is whether the district court clearly erred in its calculation of Defendant's intended loss. Defendant argues that the intended loss should have been calculated by adding the amount of automatic funds per application -- even when that sum was not awarded -- to the amount of funds actually requested in excess of automatic disbursements: a total of $107,090.02.[9] A $107,090.02 loss would have resulted in an eight-level, instead of a fourteen-level, sentence enhancement. See U.S.S.G. § 2B1.1(b)(1)(E). The government contends that evidence offered at trial and during sentencing supported the reasonable

---

[9]At sentencing, Defendant argued that intended loss should have been calculated from the aggregate amount of aid for which she actually applied: $85,510.02.

8

inference of Defendant's intent to incur the maximum possible loss for each application submitted.

    A.    The District Court Did Not Clearly Err In Its Calculation of Intended Loss

When calculating loss for sentencing purposes, the district court looks to the "greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1), n.3(A). Intended loss is "the pecuniary harm that was intended to result from the offense" and it "includes intended pecuniary harm that would have been impossible or unlikely to occur." Id. at n.3(A)(ii) (emphasis added).[10] Because "[a] defendant's intent is often difficult to prove[,]" it "often must be inferred from circumstantial evidence." Nosrati-Shamloo, 255 F.3d at 1292.

Here, the district court was presented with sufficient circumstantial evidence of Defendant's intent to inflict $26,200, the maximum possible harm, for each FEMA application she submitted. The record shows that Defendant fraudulently applied for FEMA funds at least twenty times. For some of the applications, Defendant had received only the funds automatically disbursed by FEMA. For

---

[10]For example, intended loss would include the entire value of an insurance-fraud scheme, even when the claim exceeded the insured value. U.S.S.G. § 2B1.1(b)(1), n.3(A)(ii).

9

others, Defendant had taken more steps to obtain additional rental or property-damage assistance: she submitted phony leases to procure additional rent awards; she requested money for a breathing machine; she filled out and submitted forms beyond her requests for automatic disbursements. Even after she was indicted, Defendant went back to FEMA for more money.

Because Defendant exhibited a pattern of applying for funds beyond FEMA's automatic disbursement on some of the applications, it was reasonable for the district court to infer Defendant's intent to pursue additional money from the other applications. The district court reasonably inferred that Defendant -- unless circumstances limited her -- eventually intended to pursue maximum disbursements for each application. Circumstances did limit Defendant; but that Defendant was caught mid-scheme further supports the inference that absent an indictment (and in one case, in spite of an indictment), Defendant would have sought more money from the existing FEMA applications.

"The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1(b)(1), n.3(C). As a result, the sentencing judge's determination of loss is "entitled to appropriate deference." Id. Although "courts must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines," United

States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) (internal citations omitted), the district court did not just speculate here. Instead, it looked to specific circumstantial evidence -- mainly Defendant's course of conduct -- to calculate the loss Defendant intended to cause. Based on the evidence in this record, the district court did not clearly err by determining an intended loss of $26,200 per application.

      B.    The District Court's Denial of Defendant's Motion For Variance Was Reasonable

Defendant also appeals the district court's denial of her Motion for Variance from the Sentencing Guidelines. See 18 U.S.C. § 3553 (permitting variance pursuant to sentencing factors). In addition, she argues that her ultimate sentence was unreasonable.

Defendant admits that the district court properly considered the 18 U.S.C. § 3553(a)(1) factors regarding the "nature and circumstances" of her offenses. Nevertheless, she argues that her sentence was unreasonable because the court did not consider the "history and characteristics of the defendant": namely, Defendant's diminished capacity, which she says prevented her from accepting guidance from her lawyers. See 18 U.S.C. § 3553(a)(1).

11

Here, the district court properly calculated Defendant's guideline range: 87 to 108 months. The court then identified Defendant's mandatory minimum sentences. See 18 U.S.C. §§ 924(c), 1028A. After considering the section 3553(a) factors -- a consideration noted in the record -- the district court sentenced Defendant to 108 months, to run consecutive to her mandatory sentences.

Because the district court sentenced Defendant within a properly calculated guideline range, its decision is presumptively reasonable. See United States v. Johnson, 485 F.3d 1264, 1272 (11th Cir. 2007). In the light of the scope and the severity of Defendant's many crimes, we cannot say that the district court imposed an unreasonable sentence.

Moreover, the district court was reasonable in its denial of Defendant's Motion for Variance. Defendant's assertion of diminished capacity was contrary to a forty-five day forensic evaluation conducted at Defendant's request. That report concluded that Defendant was likely malingering and that she was possibly "motivated by external incentives such as . . . evading criminal prosecution." Even Defendant's trial counsel acknowledged that Defendant was "entirely capable of rendering valuable assistance" in formulating her defense. The district court was reasonable in denying Defendant's motion and in imposing Defendant's sentence. Accordingly, we affirm the district court's sentence.

AFFIRMED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: *[signature]*
Deputy Clerk
Atlanta, Georgia