In The United States District Court
For The Middle District Of Alabama
Northern Division.

RECEIVED
2019 DEC -2 P 1:48
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

United States

Bernetta Lashay Willis

V.

United States of America

Case # 2:19-cv-651-MHT

## Motion to Amend Exhibit

Comes Now Petitioner, Pro Se, with an Exhibit/Evidence of Why the Court Should Grant her Compassionate Release Extraordinary Compelling Circumstances 3582(c)(1)(A)

Petitioner discovered lumps in her breast and notified medical sick call and it was nearly a month before she saw MLP Hunter Busky. Hunter Busky discovered the lumps, describing them different sizes or grapes. Petitioner is still waiting since July 2019 to see specialist for mamogram. Petitioner Mother, had breast cancer and spread through her body she passed away of cancer.

The prison Suppose to give petitioner Mamogram yearly because of the risk, petitioner haven't had a mamogram since 2015.

Petitioner was taken to Pickens Hospital November 22, 2019 and was informed she was not scheduled for that day. Officer Smith, Lockett, Moore and Price took petitioner and two more inmates. The hospital said petitioner was not scheduled until January. Now that might change due to petitioner over heard the time for security reasons.

Petitioner feels weak, dizzy, pain in the breast.

Petitioner plead with this Court for help like Ms. Angela Beck in the Exhibit #1 in the article, Beck also was at the same prison petitioner is currently at. Judge Catherine Eagles Granted her Compassion Release. So many inmates has passed away within a year at the prison Aliceville. Petitioner mother already passed away in prison. Petitioner filed for Compassionate Release 10-2018 and was denied June 10th 2019 and notified in July 2019.

## Certificate Of Service.

Petitioner has placed this in the prison Mail box on November 26th 2019.

Petitioner Swears She has sent a copy to 131 Clayton St Montgomery AL. 36104 to the U.S. Attorny office.

Bernetta La, Willis - 11880-002
Federal Correctional Institution Aliceville
P.O. Box 4000
Aliceville AL 35442

⇔11880-002⇔
District Court
1 Church ST
Montgomery, AL 36104
United States

The Court therefore found "no legitimate basis for the second shock, particularly considering (1) that the first shock had immobilized Hinkle and (2) the minimal threat to order, safety, and security that Hinkle posed even from the outset." Thus, Dukuzumuremyi was not entitled to qualified immunity. The district court's order was reversed in part and affirmed in part, and following remand the parties entered into mediation. See: *Piazza v. Hunter*, 923 F.3d 947 (11th Cir. 2019).

## Judge Orders Federal Prisoner with Cancer Released Due to Poor Medical Care

*by Matt Clarke*

In June 2019, a U.S. District Court ordered that a prisoner held at the Federal Correctional Institution in Aliceville, Alabama be released due to the poor medical care she received from the Bureau of Prisons (BOP) for invasive breast cancer.

In 2013, Angela Michelle Beck, 47, pleaded guilty to conspiracy to distribute methamphetamine and possession of a firearm in connection with a drug trafficking offense. She was one of 21 people indicted on charges of being part of a large-scale methamphetamine ring, and received a 166-month sentence. She had served over six years.

According to court documents, Beck found a lump in her left breast while taking a shower in September 2017. She reported the lump to prison officials and was seen by a doctor on October 16, 2017, then by a surgeon two months later. She had a mammogram on December 21, 2017 that showed multiple breast masses and cysts. A prison doctor ordered a biopsy.

Eight months later, the biopsy confirmed Stage II cancer and Beck was told she would need to have the breast removed. That didn't happen for another three months. It took five more months before she received a follow-up appointment with an oncologist for further treatment. By then it was too late for chemotherapy, and she had found two lumps in her right breast.

Attorneys Robert Elliot of Winston-Salem and James B. Craven III of Durham helped Beck apply for compassionate release under the provisions of the First Step Act. On June 28, 2019, U.S. District Court Judge Catherine Eagles issued a 29-page order reducing Beck's sentence to time served and granting compassionate release.

Judge Eagles gave BOP officials 21 days to evaluate Beck's residence and implement a five-year period of supervised probation. In her order, Eagles said she had granted compassionate release due to Beck's "invasive cancer and the abysmal health care [that the] Bureau of Prisons has provided," which qualified "as 'extraordinary and compelling reasons' warranting a reduction in her sentence to time served."

"With appropriate supervision, the court concludes that Ms. Beck 'is not a danger to the safety of any other person or to the community,'" Judge Eagles wrote. "Ms. Beck poses little risk of recidivism or danger to the community.... As such, Ms. Beck is entitled to compassionate release."

BOP officials did not deny any of the allegations in Beck's request for compassionate release or provide an explanation for the delay in her medical care. However, they did argue, unsuccessfully, that she did not qualify for compassionate release because she didn't have a terminal disease or a debilitating medical condition that prevented her from taking care of herself, and that she may still "present a danger to the community given the seriousness of her offenses."

Beck had previously filed a lawsuit seeking an order requiring the BOP to provide treatment for her cancer. In that case, which was also heard by Judge Eagles, prison officials were ordered to ensure that Beck received immediate medical care. In granting compassionate release, Eagles noted that the BOP "continues to justify delays by blaming non-BOP officials, such as her oncologist, and logistical issues, and it has provided erroneous information about her recent appointments to the Court. The quality of Ms. Beck's cancer treatment at [the BOP] in the past remains the best predictor of what it will be in the future." See: *United States v. Beck*, U.S.D.C. (M.D. NC), Case No. 1:13-cr-00186-6-CCE; 2019 U.S. Dist. LEXIS 108542.

Additional source: *journalnow.com*

---

**John F. Mizner, Esq.**
311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889
jfm@miznerfirm.com



MIZNER
—LAW FIRM—

Representing Pennsylvania Inmates
Medical mistakes
Inadequate care
Delay in treatment



Artist behind the walls?
Inspired by prison art?
Roll with the big dogs!
Check out *Ink from the Pen*!

760.616.0557 | www.InkFromThePen.com
*Magazines are allowed in most State and Federal Prisons*

Exhibit 2



U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution
P.O. Box 445
Aliceville, Alabama 35442

*Office of the Warden*

June 10, 2019

MEMORANDUM FOR    Willis, Bernetta Lashay
REG. NO. 11880-002

FROM:    Patricia V. Bradley, Warden
FCI Aliceville, Alabama

SUBJECT:    Compassionate Release/Reduction In Sentence (RIS)

Consideration for your release, under the provisions of Title 18, United States Code, Section 3582(c)(1)(A), and Bureau of Prisons' Program Statement 5050.50, has been given careful review, which included case summary information and length of time served. Based upon this information, your request for a Compassionate Release/Reduction In Sentence (RIS) has been denied.

Currently, you do not meet the criteria for a Reduction In Sentence based on Medically Debilitated Inmates with Medical Conditions. Although you have several chronic medical conditions you are able to independently attend to your activities of daily living. A review of your current medical status indicates that your chronic conditions are stable with appropriate treatment plans in place. After careful review of this information, consideration for Compassionate Release/RIS is denied. In compliance with Bureau of Prisons' Program Statement 5050.50, you may appeal this denial through the Administrative Remedy Program.

Medical staff will continue to monitor your conditions as clinically indicated. I suggest you work with your unit team and your designated medical and mental health team to address your needs, as they may arise.

# INFORMAL RESOLUTION ATTEMPT

November 26, 2018

Willis, B
Reg. No.: 11880-002

BP-8 Medical

This is in response to the attached complaint in which you state that you were taken off of blood thinners and that you have not seen a specialist as the Vascular Cardiologist had stated.

Per medical staff a review of inmate Willis's medical chart revealed on January 24, 2018, Dr. Griffin noted that her Plavix therapy was complete and indicated that a daily 81mg aspirin was appropriate. I have also noted that as of October 31st, 2018, she is only 72% compliant with her aspirin regimen. Please let her know that this is a daily medication.

If you are not satisfied with this decision, you may appeal to the Warden on an Administrative Remedy Form BP-229

_____        11-26-18
S. Westley, Correctional Counselor        Date

# JAMES B. CRAVEN III
ATTORNEY AT LAW

JANIE K. LATTA
LEGAL ASSISTANT

LIBERTY MARKET BUILDING
349 WEST MAIN STREET
P. O. BOX 1366
DURHAM, NC 27702
(919) 688-8295
FAX (919) 688-7832
jbc64@mindspring.com

November 9, 2018

Lawrence Kupers, Esquire
Deputy Pardon Attorney
145 N Street, NE
Washington, DC 20530

    Re:  Bernetta Lashay Willis
         Reg. No. 11880-002

Dear Larry:

    Enclosed for filing now is the Petition for Commutation of Sentence for Bernetta Lashay Willis, now at FCI Aliceville, Alabama. At only 40, with her remarkable laundry list of serious medical issues, she is surely one of the most expensive guests the BOP has. She will have served, with BOP good time, 177 months as of November 30. She cannot possibly live another 25 plus years to her June 20, 2044 release date at age 66. She is in no way of course entitled to a commutation. We are asking for one as an act of mercy from the President.

    Many thanks.

                                    Very truly yours,

                                    James B. Craven III

JBCIII/jkl
Enclosure
Cc:  Ms. Bernetta Lashay Willis
     Ms. Georgen Arsons
     Hon. Terri Sewell
     Ms. Mercedes W. McQueen

JAMES B. CRAVEN III
ATTORNEY AT LAW

JANIE K. LATTA
LEGAL ASSISTANT

LIBERTY MARKET BUILDING
340 WEST MAIN STREET
P. O. BOX 1366
DURHAM, NC 27702
(919) 688-8295
FAX (919) 688-7832
jbc64@mindspring.com

October 10, 2018

Hon. Terri Sewell
Member of Congress
Courthouse Annex 3
101 South Lawrence Street
Montgomery, AL 36104

      Re: Bernetta Lashay Willis
          Reg. No. 11880-002

Dear Congresswoman Sewell:

    Bernetta Willis of Montgomery needs your help. Let me explain. Bernetta, now 40, is at FCI Aliceville, Alabama, with a Bureau of Prisons (BOP) release date of June 20, 2044. Her sentence was truly 516 months (43 years). As of September 30 she had served exactly 152 months straight calendar time, or 175 months with BOP good time. That is not an insignificant sanction for FEMA fraud and associated offenses. She is in truly wretched health and meets all the BOP criteria for Compassionate Release, under 18 U.S.C. 3582(c)(1)(A)(i).

    Bernetta was tried and sentenced by Judge Mark E. Fuller in Montgomery. He has of course since resigned under the threat of impeachment. Her primary lawyer then, Valerie Smedley, has since been disbarred. Somehow she found me, and I just cannot say No to these sad folks, having done this work for 50 years now.

    We are seeking compassionate release, always an uphill battle with the BOP. Bernetta has a history of recurrent seizures since childhood, along with chronic pain in her neck and shoulder resulting from a stabbing injury some years ago. She has had two cardiac bypass surgeries. She had surgery for vascular clots in 2013, and has peripheral vascular disorder, combined with a possible aortic aneurysm, possible glaucoma, and major depression. At only 40 she is way out of warranty for sure. Her BOP release date is June 20, 2044. I cannot imagine what it will cost to keep her imprisoned another 26 years, on top of the almost 15 years she has already served.

    We are also going to apply for a Presidential commutation of her sentence, on the theory of with President Trump, why not?

    The BOP has been roundly criticized by the Sentencing Commission, the Inspector General of the Justice Department, and an increasing number of House and Senate members of both parties for being glacially slow in compassionate release cases. The BOP has made an art form of foot-dragging, even in cases where the poor guy is already in palliative hospice care. They don't usually listen to anyone, but Congressional and judicial inquiries sometimes bear fruit. I have done this frustrating work for almost 50 years, and have been helped by dozens of Congressmen and Senators.

    Your House colleague Walter Jones of North Carolina actually telephoned BOP HQ in Washington in October 2015 about a terminally ill fellow, and it worked. Congressman G.K. Butterfield Jr. of North Carolina met with President Obama about one of my folks, as did

Congresswoman Marcia Fudge of Ohio. And the late Senator Strom Thurmond of South Carolina some years ago twice telephoned President Reagan for me. All we need from you is an inquiry to the BOP about compassionate release for Bernetta Willis so she can home. Enclosed is a Privacy Act form she signed. Please let us know.

    Many thanks.

                                    Very truly yours,

                                    James B. Craven III

JBCIII/jkl  
Enclosure  
Cc: Ms. Bernetta L. Willis  
     Ms. Georgean Arsons

### The Offense Conduct

2. On August 29, 2005, President George W. Bush declared multiple counties in Louisiana major disaster areas as a result of Hurricane Katrina. As a result of the declaration, federal funds were made available to assist eligible individuals located in the affected areas. Types of assistance made available to qualified applicants included Temporary Housing, Mortgage/Rental Assistance, Individual and Family Grants, Disaster Food Stamp benefits and Disaster Unemployment Assistance through FEMA, a federally funded program.

3. As part of an ongoing investigation of fraudulent claims originating from the Montgomery, Alabama, area, Department of Homeland Security (DHS), Office of Inspector General (OIG), investigators began an investigation involving **Bernetta Willis**, after viewing a vehicle registered to **Willis** parked at the address for Reginald Pringle and Crystal Phillip, who were also under investigation. The National Emergency Management Information System (NEMIS) contained the name **Bernetta L. Willis,** SSN: 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. The application was filed on September 5, 2005, reporting damage at 2700 Whitney Avenue, Apartment 803, Harvey, Louisiana. **Willis'** current address was listed as 3717 Princeton Road, Montgomery, Alabama. **Willis** received $4,358 from FEMA for housing assistance and rental assistance. LETS identified **Willis'** social security number as 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; and her date of birth as June 5, 1978.

4. On October 24, 2005, an OIG investigator interviewed **Willis,** who stated that she was living at the Emerald Pointe Apartments, 27000 Whitney Avenue, Apartment 617 Harvey, Louisiana, with her boyfriend and two children when Hurricane Katrina made landfall. **Willis** provided the investigator with a copy of a lease for the apartment. After she left Louisiana, **Willis** said she met Shirley Brown at the Peddler's Inn, in Montgomery; and that Brown filed the claim for **Willis**. **Willis** stated that she received two checks from FEMA; and that she cashed both checks.

5

Exhibits pg 6-9

## Base Of Case Fraud

and pg 8 1st paragraph Collum 18. Shows petitioner Disability and she was receiving SSI Benifits for Mild Mental Retardation (3180) and mood disorders. 2960, At the time of her Arrest.

Pg 7 paragrah 15 Shows Howard lied on Willis because it was entered into trial Evidence The lady at the Warrant Clerk wrote a Statement Willis Entered the Warrant Clerk to Sign a Warrant on Howard and her accomplice Kevin Howard. There's no phone records entered into trial Willis called Howard phone that night.

These Exhibit pg 6-9 Shows also The Agents was NEVER Investigating Willis For drugs, to have made it A Drug Case.

U.S.A. v. Bernetta LaShay Willis  
Docket No. 2:06CR0071-MEF-001

Presentence Investigation Report

5. On October 28, 2005, Agents Ed Kleppinger and Terry Crump received documents from Blake LeBlanc, owner of ACE Check Cashing located at 604 West Fairview Avenue, Montgomery. The documents included several copies of checks and the identifications used to cash the checks. LeBlanc had started to turn many people away with FEMA checks because he suspected many of them to be questionable. LeBlanc provided copies of nine checks totaling $18,358. **Willis** had personally cashed check number 22906613, in the amount of $2,000, using the address of 3717 Princeton Road.

6. On October 29, 2005, **Willis** was interviewed by the OIG, and she maintained that she lived in Harvey, Louisiana, at the Emerald Pointe Apartments. She also stated that she did not file a FEMA claim for herself or anyone else. **Willis** provided a sworn written statement to the OIG.

7. On December 5, 2005, the OIG identified two additional checks in the name of **Bernetta Willis.** This brought the total amount of the checks issued by FEMA to **Willis** at 3717 Princeton Road, to $8,716.

8. The OIG interviewed **Willis**, again, on Tuesday, December 6, 2005. **Willis** could not identify any major streets near her reported apartment building in Harvey, Louisiana. **Willis** named Manhattan Street, but could not provide any other street names or directions on how to get to her apartment complex. **Willis** stated she was staying at 617 Whitney Avenue, Emerald Apartment. **Willis** also stated that the rent for the apartment was $506, when, in fact, the rent was not indicated on the application.

9. **Willis** finally stated that she did receive and cash two checks from FEMA. The OIG informed **Willis** that four checks were issued in her name. **Willis** then stated that she cashed two checks, maybe three. **Willis** told the investigator that she would try to do something to pay the money back, if she should not have cashed a certain check that she received.

10. **Willis**, again, contended that she did not file the claims, but instead "Ms. Shirley" filed them for her. **Willis** stated that she did not know what information had been used by Ms. Shirley to file the claims. The OIG had previously attempted to locate Ms. Shirley at the Peddler's Inn, with negative results.

11. **Willis** claimed she was living with David Turner in Louisiana, with two of her children; and that her other two children stayed in Montgomery, with her current landlord, Elizabeth Grant.

12. On Thursday, December 8, 2005, the OIG received information, via fax, from the Alabama Department of Human Resources (DHS), which reflected that **Willis** had received food stamp benefits from November 2004 through December 2005. An additional note attached indicated that Katrina evacuees were only certified for four months, if they met the requirements.

13. On Sunday, December 11, 2005, the OIG interviewed **Willis'** landlord, Elizabeth Grant, at 3717 Princeton Road, Montgomery, Alabama. According to Grant, **Willis** was always in and out of town; and **Willis** would pay Grant to keep all four of her children, sometimes for a week or more at a time. The Princeton Road address was previously a boarding house that Grant rented to several occupants, but Grant could not recall exactly who lived where and

6

U.S.A. v. Bernetta LaShay Willis  Presentence Investigation Report
Docket No. 2:06CR0071-MEF-001

when they lived there. The OIG identified several FEMA checks sent to this address in the names of Bernetta Willis, Litasha Washington, and Andrew Garret.

14. During the course of the on-going investigation, the OIG took statements from several coconspirators implicating Willis. Investigative information revealed Willis to be the leader in the criminal activity. Willis used the names and addresses of numerous coconspirators to file FEMA assistance claims. Willis, in turn, would have the individuals pay her a fee for getting them the checks. Additional addresses used by Willis to receive the checks include, but are not limited to, 3438 Crescent Road, Montgomery, Alabama; 933 Hill Street, Montgomery, Alabama; 4647 Virginia Loop Road, Montgomery, Alabama; 3621 Cloverdale Road, Montgomery, Alabama; and 3643 Southmont Drive, Apartment 19, Montgomery, Alabama.. Additionally, Willis was implicated for selling marijuana and crack cocaine.

15. Valarie Howard provided a proffer statement to the OIG on Friday, January 20, 2006, regarding the FEMA fraud and Willis' involvement in same. On Tuesday, January 24, 2006, the OIG received a telephone call from Howard, regarding an incident that occurred on the night of January 22, 2006, with Willis. Howard stated that Willis pulled a pistol on her (Howard) outside of the Rose Supper Club, and told Howard that she (Willis) was going to "blow her (Howard's) head off" because she (Willis) heard that Howard was going to testify against her in court. Howard further stated that she drove to the Montgomery, Alabama, Police Department (MPD) to seek a warrant; and that Willis followed her while en route, waving a gun outside the window. While at the police station, Willis called Howard's cellular telephone and continued to threaten her. Willis stated, I'm gonna get you bitch. I don't care who you call or what type of warrant you sign." The OIG followed up by obtaining a copy of the deposition filed by Howard regarding the incident; as well as interviewed the security guard and others present at the club. All implicated Willis with having a handgun and threatening to kill Howard.

16. On Friday, January 27, 2006, a federal search warrant was executed at Willis' residence, located at 3717 Princeton Road, in Montgomery, Alabama, during which the following items were recovered: a .380 automatic pistol; a .22 caliber revolver; one box of 9mm ammunition; miscellaneous FEMA paperwork and other papers related to the investigation; $1,000 cash; a blue duffle bag containing marijuana; a social security benefit statement for Litashia Washington; FEMA paperwork for Bernetta Howard; a utility bill for Andrew Garret; Wachovia checking account paperwork; FEMA paperwork for Jacob Warner; FEMA paperwork for Litashia Washington; FEMA paperwork for Bernetta Warner; FEMA paperwork for Jacob Warner, Jr.; FEMA paperwork for Bernetta Willis c/o Robert Garret; FEMA paperwork for Bernetta K. Willis; a lease for Bernetta Willis at 3717 Princeton Road from January 2005 to January 2006; numerous identification and social security cards for various individuals; and an apartment lease for 2700 Whitney Avenue, Harvey Louisiana, covered in white-out, with the name of Litashia Washington written on top of the white-out.

17. Also on January 27, 2006, the OIG spoke with Willis, via telephone, who inquired about the search warrant at her home. The OIG informed Willis that he was looking for a gun used during an incident at the Rose Supper Club. Willis told the OIG that she had a pistol; that the pistol was registered; and that she had the pistol with her in Atlanta, Georgia. Willis said that she would be in Montgomery, in approximately three hours. Willis did not return or make contact with the OIG, thereafter.

7

U.S.A. v. Bernetta LaShay Willis　　　　　　　　　　　　　　　　　Presentence Investigation Report
Docket No. 2:06CR0071-MEF-001

18. On February 6, 2006, the OIG met with a disclosure officer with the Social Security Administration (SSA) to review SSA records on Willis. Willis has been receiving benefits since April 1999. The records indicated that Willis had not received benefits outside of Montgomery, Alabama, from 1999 to the present. The address reflected on the benefits was 3717 Princeton Road, Montgomery, Alabama. Willis was receiving Supplemental Security Income (SSI) for diagnostic codes 3180 (Mild Mental Retardation) and 2960 (Mood Disorder). The disclosure officer advised that Willis did not have a representative payee, which meant that she was capable to handle and spend her SSI funds.

19. On February 10, 2006, the OIG received a response to a subpoena to Entergy Services, Incorporated, the electrical power supplier for New Orleans, Louisiana, in reference to the FEMA claims submitted by Willis. Entergy records did not show any service at 2700 Whitney Avenue, Apartment 617, Harvey Louisiana, since 2002.

20. On November 15, 2006, Deputy U. S. Marshal (DUSM) John C. Hamilton attempted to locate and arrest Litasha Washington for violation of 18 U.S.C. §§371, 287, 2, and 641. DUSM received information that Washington was residing with Willis at 3717 Princeton Road, in Montgomery. Washington was reported to drive a 1996 or 1997 Ford Crown Victoria, red and black in color, with "Scar Face" and "Say Hello to My Little Friend" painted on the side.

21. At approximately 4:45 p.m. on this same date, DUSM A. L. Reeves set up surveillance on the residence. DUSM Reeves radioed DUSM Hamilton that the described vehicle was located at the residence. Approximately 10 minutes later, DUSM Hamilton, along with DUSMs Reccio and Karle, arrived at the residence and set up a perimeter around it. The DUSMs knocked on the front door and announced their presence. While waiting for a response, DUSM Karle saw an individual walk past a front window toward the south end of the house.

22. After a few minutes, Willis answered the door. Willis was advised that the DUSMs were there to serve an arrest warrant on Washington. Willis stated that Washington did not live at the residence, nor was she there. Willis further claimed ownership of the vehicle described earlier as Washington's.

23. Willis was advised that if Washington was located inside the residence, she (Willis) would be charged under the federal harboring statute. Willis denied two additional times that Washington was in the house. Washington was located in the master bedroom shower at the south end of the house. The defendant's pretrial supervision was revoked on November 22, 2006, as a result of the defendant incurring a violation of 18 U. S. C. § 1001.

24. On December 14, 2006, DHS-OIG Kleppinger interviewed Bernetta Willis. At this time, Willis stated that right before Hurricane Katrina made landfall in August 2005, she was living with Rochandra Whipple at 566 Whitney Avenue, in Louisiana. Willis had no utilities or lease papers in her name at 566 Whitney Avenue. Willis then advised that she was planning to move there from Montgomery, Alabama. When asked where she was paying bills and had utilities in her name, Willis responded, " 3717 Princeton Road, Montgomery, Alabama." Willis then stated that her cousin, Michael Harris, a/k/a "Red, " had filed the fraudulent claims.

8

U.S.A. v. Bernetta LaShay Willis  
Docket No. 2:06CR0071-MEF-001

Presentence Investigation Report

25. On February 22, 2007, DHS-OIG Kleppinger interviewed Laura Phillips. During this subsequent interview, Phillips stated that she purchased crack cocaine from her niece, approximately $100 worth (exact quantity unknown) on a weekly basis. She stated her niece, **Willis**, told her she could credit some of her drug purchases to the checks she was going to receive in the mail. Phillips stated that on each occasion, when the checks arrived in the mail, **Willis** would pick her up, drive her to the check cashing store and she would pay **Willis** "a $500 fee". On the second occasion, Phillips stated she paid **Willis** an additional $200 for drugs previously received. Phillips stated that she was not initially aware of the source and origin of the checks and that **Willis** told her that a "lady was going around and helping people with bills". She stated **Willis** assured her there was no problem. She stated that **Willis** later told her that if anyone came to talk to her about the checks that she should say that they do not associate with one another because they do not get along well. She stated **Willis** told her that no one could make her tell on her (**Willis**).

26. On March 20, 2007, Litasha Washington was interviewed at the United States Attorney's Office, in Montgomery, Alabama, pursuant to a proffer agreement, regarding her involvement in the FEMA fraud conspiracy. Washington admitted to having been involved in a relationship with **Willis** for approximately two and a half years; and to having lived with **Willis** for part of that time. Washington admitted to assisting **Willis** in obtaining checks from FEMA. Washington also admitted to never having lived in Louisiana, thereby, never having been affected by Hurricane Katrina; and to having personally taken about $2,000 of the approximately $20,000 that she was involved in obtaining from FEMA.

27. Washington admitted to being a user of marijuana, but denied that she ever sold drugs. Washington stated that she has known **Willis** to give drugs away; and said that the one ounce package of marijuana that authorities recovered from **Willis'** residence belonged to **Willis**. Washington further stated that both firearms recovered by authorities belonged to **Willis**, as well.

28. On March 21, 2007, **Willis** was again interviewed. During this interview, **Willis** stated that she received checks from FEMA that she was not entitled to receive; and she stated that her primary residence was located in Montgomery, Alabama. **Willis** indicated that her cousin, Michael Harris, filed the claims. **Willis** also admitted to receiving FEMA assistance during Hurricanes Danny and Ivan; and stated that her landlord, John Knight, filed the claims at that time. The OIG identified four claims for Ivan filed in four different variations of the name **Bernetta Willis**.

29. Given the relevant conduct standard, and based on investigative information and trial testimony, **Willis'** involvement in the criminal activity resulted in a total actual loss of $58,499.93; and a total intended loss of $471,600. Additionally, investigative information and trial testimony revealed that the defendant is accountable for at least one ounce (28.35 grams) of marijuana; and five grams of crack cocaine.

Dear honorable Judge,

Myron H. Thompson, (Help me)

Your honor i just want to ask you to please have mercy on me, for my Children Sake, they are aware of the motion that is currently pending infront of you and Lord knows their heart is filled with Faith God will set me free this time. We've been disappointed so much in the past, by the Court, because i can not fight the case properly because im not legal expereinced, i have other inmates helping me and i've requested Attorney but it was denied Oct 7th 2019

I am worn out I've learned my lesson and ready for my blessing.

The Warden told me they can not write letters on my behalf, She would tell you of my Good Behavior, She is the Warden here and was the AW at Tallahassee 2012 when i was there. I am very humble and have a bright Spirit. The Warden told me I was the Strongest