IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No.: 2:06-cr-00071-MHT-SMD |
| | ) |
| BERNETTA WILLIS | ) |

**RESPONSE TO GOVERNMENT NOTICE OF SUPPLEMENTAL AUTHORITY**

**Ms. Bernetta Willis**, by undersigned counsel, provides the following in response to the Government's Notice of Supplemental Authority (Doc. 440) and the Court's order (Doc. 441).

    I.    Ms. Willis' grounds for Compassionate Release are extraordinary and compelling and meet the criteria of U.S.S.G. § 1B1.13.

In *United States v. Thomas Bryant, Jr.*,[1] the Eleventh Circuit held: "[U.S.S.G.] 1B1.13 is an applicable policy statement for all Section 3582(c)(1)(A) motions, and Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence."[2]

Fortunately for Ms. Willis, the grounds she asserts in support of her request for compassionate release are within these criteria.

Section 1B1.13 of the U.S. Sentencing Guidelines sets out four steps for considering a reduction in imprisonment under 18 U.S.C. § 3582(c):

First, the Court must "consider[ ] the factors set forth in 18 U.S.C. §3553(a), to the extent they are applicable."[3]

Next, the Court must determine whether "(1) (A) extraordinary and compelling reasons

---

[1] ___ F.3d ___, No. 19-14267, 2021 WL 1827158, (11th Cir. May 7, 2021).

[2] *Id.*, slip op. at 2.

[3] U.S.S.G. § 1B1.13 (first paragraph).

1

warrant the reduction; or (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison . . ."[4]

Then the Court must find that "the defendant is not a danger to the safety of any other person or to the community."[5]

Last, the Court must determine that "the reduction is consistent with this policy statement."[6]

Despite this order of decision-making identified in § 1B1.13, courts typically begin their analysis with the determination of "extraordinary and compelling reasons," and then consider the other required factors.[7]

The Application Note (1) in the Commentary to this Guideline provision states that "extraordinary and compelling reasons exist under any of the circumstance set forth below." The four "circumstances" listed are (A) medical condition of the defendant; (B) age of the defendant (requiring at least the age of 65 years, plus two other conditions); (C) family circumstances; and (D) "Other Reasons."[8]

    A.  Ms. Willis has medical conditions which meet the criteria of § 1B1.13.

The Application Note further defines qualifying medical conditions as (i) a terminal illness or (ii) one of three identified conditions "that substantially diminishes the ability of the

---

[4] U.S.S.G. § 1B1.13(1)(A).

[5] U.S.S.G. § 1B1.13(2).

[6] U.S.S.G. § 1B1.13(3).

[7] *But see United States v. Granda*, No. 20-13014, ___ Fed. App'x ___, 2021 WL 1246252, *1 (11th Cir. Apr. 5, 2021) ("The court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), <u>before</u> it can determine whether extraordinary and compelling reasons exist." (Emphasis in original).

[8] U.S.S.G. § 1B1.13, App. Note 1.

defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." The three identified conditions are (I) a serious physical or medical condition ; (II) a serious functional or cognitive impairment; or (III) deteriorating physical or mental health because of the aging process.

     As described in the evidence before this Court, Ms. Willis suffers from peripheral vascular disease ("PVD"), hypertension, painful varicose veins, and joint pain. PVD is a progressive circulation disorder. These conditions led to two bypass surgeries, in 1999 and 2013.[9] These conditions have required numerous adjustments – bed wedges, leg support hose, wrist bandages and a no-cuff order. These are serious physical or medical conditions; they impair Ms. Willis' functioning; they are not expected to improve or lead to recovery; and they substantially limit Ms. Willis' ability to provide self-care

     In addition, Ms. Willis generally has poor health and the Bureau of Prisons ("BOP") has been unresponsive to her medical needs. As known by the BOP, Ms. Willis has a family history of malignant breast cancer.[10] She also has lumps in her left breast which have caused pain and which – to this date – have not been examined by an ultrasound or more invasive procedure, despite having been identified in October 2020,[11] and despite the need for an ultrasound having been specified by BOP medical personnel on October 7, 2020; October 22, 2020; and May 3, 2021.[12] As of May 11, 2021, the most recent breast screening examination of Ms. Willis recorded by the BOP took place on February 23, 2016.[13] The deliberate failure to address this serious medical

---

[9] Defense Exhibit #7, Excerpt from Medical Records from Western Connecticut Medical Group dated October 10, 2013.

[10] Defense Exhibit #27.

[11] Defense Exhibit #29.

[12] Defense Exhibits #29, 28, 27.

[13] Defense Exhibit 31.

condition, which may lead to terminal illness, is a gross mismanagement of medical care and has been found to qualify as an extraordinary and compelling reason to support the reduction of a sentence and grant compassionate release. *United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. 2019).

BOP medical records currently record Ms. Willis as having a height of 68 inches and a body weight of 234 pounds.  This means that she is obese, with a Body Mass Index ("BMI") of 35.6.[14]  The Centers for Disease Control have identified any BMI over 30 as increasing the risk of serious complications from COVID-19.[15]  Although Ms. Willis has had one vaccine injection, and this increases her level of protection from COVID, she is still at risk to suffer more extreme conditions and symptoms if she develops COVID.  Numerous courts have found that obesity is an extraordinary and compelling reason to justify release in light of the COVID-19 pandemic.[16] **And the Government has conceded that obesity "presents an extraordinary and compelling reason for compassionate release in light of the COVID-19 pandemic."**[17]

B. Ms. Willis has family circumstances which meet the criteria of § 1B1.13.

The Application Note to U.S.S.G. § 1B1.13 identifies two family situations which are "extraordinary and compelling reasons" to grant compassionate release:  "death or incapacitation of the caregiver of the defendant's minor child" and "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or

---

[14] https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited 5/27/21).

[15] https://www.webmd.com/lung/news/20200714/why-obesity-may-stack-the-deck-for-covid-19-risk (last visited 5/27/21).

[16] *See, e.g.*, *United States v. Gonzalez*, 2021 WL 37728, *4 (Jan. 5, 2021 S.D. Cal.) (collecting cases, pro and con).

[17] *See United States v. Horace Cook*, ___ F.3d ___, No. 20-13293, 2021 WL 2149339, *4 (11th Cir. May 27, 2021) (quoting Government's brief).

registered partner."[18]

Ms. Willis' adult children testified at the hearing on Ms. Willis' motion for compassionate release. The children, particularly Mercedes and Eddie McQueen, described their particular hardships and need for their mother's care. In particular, Eddie suffers from schizophrenia and has been hospitalized several times in the past. Now, as described in the Affidavit of Ms. Willis' daughter Mercedes McQueen, Eddie has been having psychotic episodes that create a danger to himself and others.[19] While not a minor, he is incapable of caring for himself. And, as described in the Affidavit, neither Mercedes nor any other adult family member is able to care for him.

The incapacitation of a caregiver for a child is a recognized basis for compassionate release under U.S.S.G. § 1B1.13 and has been the basis for grants of release in many cases. Typically, release has been granted on this ground where the main caregiver has become disabled and unable to care for the minor children. *See., e.g., United States v. Edwards*, No. 14-323-4, 2021 WL 1105341, *2 (E.D. Pa. Mar. 23, 2021) (collecting cases and granting release where defendant's wife has developed ventricular entropy); *United States v. Morrison*, ___ F.Supp.3d ___, No. 3:13-cr-000824-LRH-WGC, 2020 WL 6806765, *2 (D. Nev. Nov. 19, 2020) (defendant's mother unable to care for teenage daughters).

However, this ground for release has also been applied to the incapacitation of the caregiver for a disabled adult family member. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236, 2020 WL 2039028, *6 (E.D. Ca. Apr. 28, 2020) (twenty-four-year old son suffered from cerebral palsy and developmental disabilities and other family members were unavailable due to sickness, substance abuse, and responsibilities for elderly relatives); *United States v. Barnes*, No. 3:17-cr-00011-RLY-MPB-04, 2021 WL 1269783, *4 (S.D. Ind. Jan. 29, 2021) (compassionate release

---

[18] U.S.S.G. § 1B1.13, App. Note 1(C).
[19] Defense Exhibit #26, filed May 27, 2021.

5

granted where defendant's twenty-year old son is disabled and requires 24-hour care and his caretaker grandmother now has medical issues and is unable to care for both her grandson and her husband, who also requires 24-hour care, noting "[t]he court finds these circumstances to be analogous to a minor child" and the defendant's young adult children are not "in a position to provide the demanding level of care" required for the son); *United States v. Griffin*, No. 1:95-cr-00751-UU-1, 2020 WL 7295765 (S.D. Fla. Dec. 8, 2020) (granting compassionate release where defendant's older sister has developed significant cognitive impairment and requires supervision and care, and other family members are unable to serve as the caregiver during the majority of waking hours); *United States v. Reyes*, No. 04-cr-970, 2020 WL 1663129 (N.D. Ill. Apr. 3, 2020) (compassionate release granted to permit defendant to care for aunt with stage four cancer); *United States v. Bucci*, 409 F.Supp.3d 1, (D. Mass. 2019) (defendant released to care for ailing mother).

Moreover, courts considering this ground have not required the complete absence of other adults in the family of the person for whom the defendant must care. *See, e.g.*, *United States v. Edmond*, No. 5:17-cr-398-1H, 2021 WL 1234509, *2 (E.D. N.C. 4/1/2021) (district court granted compassionate release because of combination of circumstances including fact that his elderly mother is suffering from congestive heart failure and is unable to continue care for defendant's two children, requiring them to live with an aunt); *United States v. Lopez*, No. 1:09-cr-00166-BLW, 2021 WL 932010, * (D. Idaho Mar. 11, 2021) (defendant's wife died in 2014 and his two children are being cared for by their uncle, grandparents and half-sisters, and "it has been difficult to keep his children together"); *United States v. Olvera*, No. 20:cr-00428-GPC, 2021 WL 824757, *1, 3 (S.D. Cal. Mar. 4, 2021) (compassionate release granted where defendant's mother, who was jointly taking care of her son, has died and aunt who was assisting is unable to care for son during the day while he attends remote schooling, noting that the first qualifying family circumstance

6

"does not require that the defendant be 'the only available caregiver' in order for the death [or incapacitation] of the existing caregiver to constitute an extraordinary and compelling reason"); *United States v. Seals*, No. 11-36-11, 2020 WL 7624948, *2-3 (E.D. Pa. Dec. 22, 2020) (release granted where defendant's mother has cancer and is unable to continue to care for her child, without requirement that defendant show other adults, including defendant's siblings, are not available as caregivers).

Thus, the incapacity and inability of family members to care for Eddie McQueen, who is suffering psychosis from his schizophrenia, is a recognized extraordinary and compelling reason to grant Ms. Willis compassionate release.

    II.    Ms. Willis qualifies for compassionate release under the "Other Reasons" determined by the Director of the Bureau of Prisons ("BOP").

Section (D) of Application Note 1 to U.S.S.G. § 1B1.13 adds another basis for finding extraordinary and compelling reasons to grant compassionate release. That section identifies general "other reasons," with the caveat that the reason must be determined by the Bureau of Prisons:

> Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

As noted above, in *United States v. Bryant* the Eleventh Circuit held that district courts do not have discretion to develop their own "other reasons." However, the BOP has identified factors which it considers when reviewing requests for a reduction in sentence, including under the compassionate release statute. In Program Statement 5050.50, issued in January 2019, the BOP identified thirteen factors that should be considered "[f]or all RIS[20] requests." These factors are:

---

[20] RIS stands for Reduction in Sentence.

7

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. This factor is considered with respect to proximity to release date or Residential Reentry Center (RRC) or home confinement date.
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

The BOP program statement also states that "[w]hen reviewing RIS requests, these factors are neither exclusive nor weighted. These factors should be considered to assess whether the RIS request presents particularly extraordinary and compelling circumstances."[21]

In addition, the factors describing the BOP's "other reasons" closely parallel the sentencing factors the Court must consider under 18 U.S.C. § 3553(a). This section requires courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. The sentencing factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed" to reflect various principles, the kinds of sentences available and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Ms. Willis qualifies for compassionate release under both the Program Statement 5050.50 and the § 3553(a) factors. At the time of her original sentencing on this case, her criminal history

---

[21] U.S. Department of Justice, Federal Bureau of Prisons, *Program Statement 5050.50*, Jan. 17, 2019, at 12, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last viewed 5/27/21).

category was very low – category II.  She has no detainers.  She has never been on supervised release.  Her institutional adjustment has been good -- during Ms. Willis' fourteen years, six months and eight days of confinement, she has enrolled in GED classes, completed almost thirty classes, and successfully held job assignments.[22]  She is current on her restitution payments and has completely paid the $2,300 court assessment.  Her disciplinary infractions are almost non-existent:  she has had only two -- one in 2015 and another in 2018.[23]  She is currently almost 43 years old and was much younger, 28 years old, at the time of her sentencing.[24]  She has a release plan and family who are in an immediate position to both allow her to live with them and to safely implement any necessary social distancing measures.[25]

And granting Ms. Willis compassionate release will not minimize the severity of her convictions or offense conduct.   Indeed, it will in part address the present grave disparity in the sentence imposed on Ms. Willis and the sentence she would receive under present statutory penalties for the same conduct.

In *Bryant*, the Eleventh Circuit panel characterized Mr. Bryant's argument for compassionate release as arguing that his excessive, "stacked" sentences under 18 U.S.C. §924(c) themselves constituted an "extraordinary and compelling reason."  The panel rejected that formulation. However, that does not preclude this Court from considering Ms. Willis' excessive, stacked § 924(c) penalties as a factor under the BOP Program Directive and/or under § 3553(a).  In *United States v. Adeyemi*, 470 F.Supp.3d 489 (E.D. Pa. 2020), the district court did exactly that.   In considering the BOP's factor, "length of sentence and amount of time

---

[22] See Defense Exhibit #23, Excerpts from Progress Report from the Bureau of Prisons dated April 21, 2020 and Certificates.

[23] See Defense Exhibit #24, Disciplinary Infractions from the Bureau of Prisons.

[24] Her presentence report gives her birthdate as June 5, 1978.

[25] See Defense Exhibit #25, Proposed Release Plan.

served," the district court noted that Mr. Adeyemi's situation "is unique" because he was serving a sentence (including thirty-two years for two consecutive § 924(c) violations) "which would never be imposed under current law." 470 F.Supp.3d at 528. And in considering the § 3553(a) factor of "unwarranted sentencing disparities," the Court noted that Mr. Adeyemi's codefendants had each already completed their sentences, which is also true in Ms. Willis' case. 470 F.Supp.3d at 531-532. Of course Ms. Willis' codefendants did not receive the same convictions as Ms. Willis or commit identical conduct. But anyone who committed identical conduct <u>now</u>, under the present sentencing scheme, would serve a sentence at least twenty-years less, given that the twenty-five year sentence Ms. Willis received on count 30 for a second violation of § 924(c) would now be a five year consecutive sentence.[26]

Thus, Ms. Willis also qualifies for compassionate release under the BOP directive which describes the "other reasons" referenced in Application Note 1(D) to U.S.S.G. § 1B1.13.

III. To the extent an interpretation of 18 U.S.C. § 3582(c), 28 U.S.C. § 994(t) and/or U.S.S.G. § 1B1.13 restricts criteria to determination by the U.S. Sentencing Commission or the Bureau of Prisons, that interpretation violates the constitutional non-delegation doctrine and creates an unconstitutional delegation of legislative authority.

Of course the *Bryant* decision created a circuit split, in conflict with eight other circuits: *See United States v. Brooker*, 976 F.3d 228, 235- 36 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109-11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 275-77, 280-84 (4th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1048-51 (10th Cir. 2021); *United States v. Maumau*, 993 F.3d 821, 832-37 (10th Cir. 2021); *United States v. Aruda*, 993 F.3d 797, 799-802 (9th Cir. 2021); *United States v. Shkambi*, 994 F.3d 338, 392-93 (5th Cir. 2021); and *United States v. Long*, -- F.3d --, No. 20-

---

[26] See Judgment, (Doc. 286),

3064,2021 WL 1972245 (D.C. Cir. May 18, 2021). And for all the reasons outlined in these eight circuits' decisions, as well as Judge Martin's dissent in *Bryant*, Ms. Willis respectfully maintains that *Bryant* is wrongly decided.

*Bryant* has created a constitutional problem which it did not directly address. *Bryant* held that "[t]he statute commands the [U.S. Sentencing] Commission to publish a policy statement that defines 'extraordinary and compelling reasons.'"[27] *Bryant* holds that Congress expressed this commandment in the Sentencing Reform Act of 1984, in both 28 U.S.C. § 994(t)[28] and 18 U.S.C. § 3582(c)(1)(A).[29] *Bryant* concludes that the Sentencing Commission fulfilled this commandment with the promulgation of U.S.S.G. § 1B1.13.[30]

However, the panel majority has misinterpreted 28 U.S.C. § 994(t). That section directs the Commission to "describe," not "define," and to give "criteria" and "a list of specific examples." The word "describe" is defined in the Oxford English Dictionary as "[t]o portray in words or by visual representation." This is far different from the rigid parameters suggested by the word "define." If U.S.S.G. § 1B1.13 complies with this directive, it is by providing illustrative examples, not by limiting consideration.

But if the more rigid construction referenced by the *Bryant* opinion is intended, then it violates the principle that Congress cannot delegate its legislative authority to another branch of government. *A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935). A

---

[27] 2021 WL 1827158 at *1.

[28] 28 U.S.C. § 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

[29] 2021 WL 1827158 at *3.

[30] *Id*.

"statutory delegation" by Congress to another branch is constitutional "as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is to conform." *Gundy v. United States*, 139 S.Ct. 2116, 2123 (2019) (plurality op.), citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989). This requires that Congress "clearly delineate[] the general policy" and "the boundaries of this delegated authority." *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

In *Bryant*, the panel majority interpreted 28 U.S.C. § 994(t) to both delegate to the Sentencing Commission the responsibility to define the core terms of 18 U.S.C. § 3582(c) and to make the Sentencing Commission's definitions as binding as Congressional legislation.[31] But, other than disallowing rehabilitation as a sole basis for reduction in sentence, § 994(t) does not include any guidance, criteria, general policy, or meaningful limits on what should be determined "extraordinary and compelling." When Congress fails to clearly articulate its intended policy or the limits of delegated authority, then the delegation is constitutionally invalid.[32] And the resulting delegated authority of U.S.S.G. § 1B1.13, to the extent it restricts district court's discretion, is unconstitutional.

In addition, Application Note 1(D) to U.S.S.G. § 1B1.13 also contains an unconstitutional sub-delegation of authority, when it "throws the ball" back to the BOP. As Judge Martin argues in dissent in *Bryant*, "[a]n agency cannot delegate to another agency powers that Congress did not give that second agency."[33] Thus, the unconstitutional sub-delegation of authority to the BOP nullifies Application Note 1(D) in its entirety and leaves the remainder of the Note as a

---

[31] *Id.*

[32] *Schecter Poultry*, 295 U.S. at 538, 542.

[33] 2021 WL 1827158 at *22, citing *Bayou Lawn & Landscape Service v. Secretary of Labor*, 713 F.3d 1080, 1084-1085 (11th Cir. 2013), which in turn cites *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)

non-exclusive list of examples. This is what 28 U.S.C. §994(t) intended when it directed the Commission to "describe." Thus, this Court is empowered to find additional circumstances that qualify as "extraordinary and compelling reasons" for compassionate release.

This Court's discretion should not be constrained by the Sentencing Commission, U.S.S.G. § 1B1.13, or Application Note 1(D).  Notably, the Commission has also failed to comply with the mandate in § 994(t) that directed it to describe "the criteria to be applied." *Bryant* seems to hold that district courts do not have authority or discretion to discern these criteria. That holding is incorrect.

        Respectfully submitted,

**/s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

    Respectfully submitted,

    **/s/Christine A. Freeman**
    **CHRISTINE A. FREEMAN**
    **TN BAR NO.: 11892**
    Federal Defenders
    Middle District of Alabama
    817 South Court Street
    Montgomery, AL 36104
    TEL:  (334) 834-2099
    FAX:  (334) 834-0353
    E-Mail: Christine_Freeman@fd.org